Law as to County Liability and Qualified Immunity and the Rule 59 Motion for New Trial based on the Jury Instruction on Reckless Investigation and Attorney Misconduct. Your view is shaped by the verdicts in favor of Sheriff DeWitt and the verdicts against conspiracy, the recent U.S. Supreme Court cases of White v. Pauley and Manuel v. City of Joliet, these things narrow the path to liability in this case. The Qualified Immunity Analysis is narrowed by the parties and by time. With the absence of conspiracy, you can no longer consider Prosecutor Smith's role and his decisions he made as a prosecutor. Your attention must be focused on the knowables of Searcey and Dr. Price. The County Liability Claim is derivative of the Liability Claims against Searcey and Dr. Price and that's according to Instruction No. 14 and the verdict forms. The County is entitled to every favorable inference based on the verdicts in favor of Sheriff DeWitt and the verdicts against conspiracy, which means that Sheriff DeWitt did not knowingly agree or come to a mutual understanding to recklessly investigate the case or to manufacture false evidence. Would negligence be enough? Negligence is not enough, Your Honor, nor is respondeat superior. It's insufficient that he's the Sheriff and he understood an investigation was taking place, even a bad investigation.  The jury found in his favor on those issues. The County is entitled to a favorable inference on that basis. What about testimony like Dean's attorney Schmeling who says, I get a call from the Sheriff. They'd say James Dean had a bad night. Get over there and get it settled down. That's the Sheriff directly involved and as you know, he flies around the country and he says, I don't Is that enough? Even if there is a verdict for him, I quite understand a reckless investigation in manufacturing, which have different elements and I understand the conspiracy, but please address all the personal involvement of the Sheriff. Well, it's not personal involvement, Your Honor. It has to be decisions that he's making in his role as a final policymaker for the County. If he's involved and there's no or Dr. Price did, it doesn't matter. So the fact he's calling, that's all constitutional violation associated with the Sheriff contacting Schmeling to say that Dean needs to be calmed down because Dean was anxious in jail. So it's not enough to show he was personally involved. He has got to be involved as a decision maker. You know, the various quotes in the record where it says this was so important to the Sheriff. You know, the various quotes that are in the record is to that. I have a whole bunch of them here. When you get to points like that, how about that? Is that enough for County liability? No, he must make decisions. Well, he makes assignment of the officers. That's undisputed on this record. Well, assignment isn't enough. That's responding at superiority is never enough. Negligence isn't enough. He has to understand that a constitutional violation is taking place and he has to either authorize it, direct it, or acquiesce to it or be involved in it. Council surely, surely be involved in it's enough, right? Well, if you're on the scene doing it, you can't then say, Oh, I'm just the boss. He has to understand that what's occurring as a constitutional violation. It's not enough that he's involved or he's around the scene that is insufficient. Okay. What's the best case that says personal involvement, but the decision maker, uh, is not enough. I think we're saying it the right way. You and I are communicating. I'm sure. Go ahead. I, I'm not aware of one as we stand through today. Um, you've got authority in your brief proceed, right? Right. Um, but what I want to get some clarification on the statement you made at the very beginning when you said that the County's entitled to every inference. What do you, what do you mean by that? I mean, are we looking at jury verdicts here and you're looking at jury verdicts. I mean, the plaintiffs are asserting to you that they're entitled to every hair of inference in their favor. This was not a verdict or a case that went totally the plaintiff's way. There were verdicts in favor of Sheriff DeWitt. But where do you get the, where does this argument come from? That the County's entitled to every inference? What are you talking about? What are you talking about? What, what inferences are you talking about and why? Well, the inferences I'm talking about is there was a finding in favor of the Sheriff DeWitt, meaning that he was not personally involved in any claim for reckless investigation. He was not involved in the claim for manufacturing. Now, how do you know that that means that, how do you know, how would, how do we know why the jury came to that conclusion? It can't mean anything else. A verdict in his favor can only mean that. But County, but the same jury brought back a verdict against the County. And that's why we have to do every inference favorable to that Absolutely you do. But I think you also have to understand and interpret what that means. Because there's a finding against conspiracy as well for everybody. There was no conspiracy here. And the instruction on conspiracy says, in order to find that you have to find that he knowingly agreed or came to a mutual understanding. But that could be an agreement could be different than directing some of the deputies or the others to conduct their investigation in a certain way or putting a stamp of approval on it. So those two things don't completely overlap, do they? They do not completely overlap. That's correct, Your Honor. But it also means that he has to have knowledge that what he's directing or what he's understands is occurring is a constitutional violation. That part is required. What about Stephen's testimony? If you take all the inferences from Stephen's testimony, and you know the stuff I'm talking about, the money in the water, the throwing the papers, I got a whole bunch of stuff here. If you take all that stuff, is that enough? It is not enough. I think you have to look at what happened. The money in the water's claim does not mean that he was agreeing to a reckless investigation. That's not what it was about. And that meeting had nothing to do with Deputy Searcy or Dr. Price. It was about what Stephen's actions had been in regards to going out and independently talking to a witness. And a witness was saying that Stephen was trying to tell him or change his testimony or story about what happened. That's where the money in the water comment comes about. This is not one that... Of course, Stephen says that after that, he was taken off the case. The favorable inference is that after the money in the waters and throwing the papers, that's why Stephen's was taken off the case. Sheriff DeWitt... Stephen says that. Go ahead. I understand. I agree with you that Stephen says that. But what I'm telling you is that Sheriff DeWitt is the final policymaker for the county, not for the Beatrice Police Department.  And Sheriff DeWitt certainly was not the final policymaker for the county as it came to prosecutorial decisions. You found that in the 2015 decision in this case. When considering reckless investigation and the manufacturing false evidence claim and determining whether any particular piece of evidence used by Searcy or Dr. Price rises to the level of a constitutional violation of clearly established law, there are three principles that should guide the analysis. First, is there a problem with some piece of evidence gathered as part of the investigation? Was that problem apparent on the face of the evidence that could be assessed by the procedure, by defense counsel, and ultimately by the jury? Secondly, did Searcy or Dr. Price do anything to hide or obscure whatever the problem with the evidence there was and thereby interfere with some due process rights of the plaintiffs? Third, if the answer is no, what duty did Searcy or Dr. Price have with respect to that piece of evidence? There's no duty to be free of an investigation and no claim that the techniques used independently violated a constitutional right that rose to the level of rack and screw. Was there some bar against moving forward with the investigation because that evidence had been gathered? There's no duty to be free from an investigation and was there someone the evidence was shared with defense counsel, with the prosecutor, they had everything available. Reckless investigation in this case has been defined at a high level of generality. How would you define it? You know, I think in fairness to our clients, it should have been defined in a way that they would have been alerted to what the constitutional violation was. The way it's defined in this case applied to a broad investigation from the beginning of the investigation all the way to DNA evidence in 2008. Where was the specific thing that they did that was reckless? It's so diffuse, I think it was so impossible in this case. If there was something, some constitutional violation that they did, it should have been identified and it never has and I think that's what makes this case so hard. Reckless investigation certainly was not particularized to the facts of the case and certainly not to Searcy or Dr. Price in 1989. There was no clearly established law to the level required by White v. Pauli that existed prior to 1989. No Supreme Court precedent, no 8th Circuit case. There was no robust consensus of persuasive authority on that issue prior to 1989. In fact, that's true today. There's no robust persuasive authority. First, fifth, sixth, seventh, ninth and tenth circuits have all rejected reckless investigation as being a substantive due process claim. The seventh circuit held in 2012 that they rejected reckless investigation as a substantive due process claim as being a way to get around a barred Fourth Amendment claim. Last year, the sixth circuit said that it wasn't clearly established law that you had a right to be free from a reckless investigation. So are you arguing that the most previous case that was decided in these proceedings is inaccurate, that we need to revisit that? Is that what you're asking us to do? Yes. I believe that based on the verdicts in this case, how it shaped this case, that it does need to be looked at as it applies to Searcy and Smith. The way this case has been looked at before in 2012 on the summary judgment, it's been looked at again from the beginning of the investigation all the way through the DNA evidence. And you need to narrow it down as far as time and apply it to Searcy and Price because that's all that's left. So you cannot, you can no longer look at this as one big picture. You've got to narrow it down to what these two did. What did they know? And what violated their constitutional rights? In fact, I would point out. You agree it could be a series of act over a long period of time. What's that? I'm sorry. I swallowed it. You agree it can be a series of acts over a period of time. It could be, but it has to be in their control as investigators in the law enforcement role. It can't be the prosecution. That's not their decision to make. It can't be whether the prosecution should have been stopped. They don't decide that. In fact, the Sixth Circuit has held since 1987, in order to have a substantive due process claim, there must be some bodily injury, bodily violation, such as torture, the use of an emetic, the rack and the screw. It's also our position that we're entitled to a new trial based on the jury instruction on reckless investigation, and that it allowed for the jury to find liability based on the gathering of unreliable evidence. There's no clearly established law today, much less before 1989, that said law enforcement could only gather reliable evidence. The Lawrence County case in Missouri, was it an 88 case? It was. You know the one I'm referring to. It's an Eighth Circuit case. Exactly. Wilson v. County of Lawrence.  It's a 2001 case, and the facts in that case occurred in 1986. But if you look at that case, there's no citation to clearly established law that set forth that the constitutional right to be free of reckless investigation, that rose to the level of shocking the conscience. But this court does act like in 1986, it was clearly established, right? Does it say it? Yes, I think so. Well, I'm not sure that it says it, but I would disagree that it was clearly established in 1989 to the extent, your honor, that they do not reference or cite to any specific case that White v. Pauley requires that it be, that existed prior to 1989. And there's no evidence in this case that Dr. Price gathered any evidence, much less false or unreliable. Well, no, he's charged with manufacturing evidence, the dream stuff, and everything else involved in the case. It's not gathering, it's creating manufacturing evidence. Well, that's a separate claim, isn't it? That's manufacturing false evidence, then you have reckless investigation, right? And I would encourage you to look at Manuel v. City of Joliet as well. This is a case that came down after our briefs were submitted in March, where the court held that the period of time you looked at for Fourth Amendment violation extends beyond the first legal proceeding all the way to trial. And again, as a reminder on Albright v. Oliver, that when there's a specific amendment that applies, that's the one you use for that protection, not an amorphous substance of due process claim. So in this case, it's not that the Fourth, Fifth, and Sixth Amendments weren't available. It's that they were determined early on to be barred by the statute of limitations or determined by this court to have insufficient evidence. But that doesn't mean that any evidence that might have been relevant to that claim wouldn't possibly be relevant to another claim as well. It doesn't preclude all evidence just because it was relevant to the Fourth Amendment claim, correct? No, that's not my point. My point is, if it's the Fourth Amendment that applies, that's where it belongs, not under an amorphous substance of due process claim. Counsel, you're into your rebuttal. Thank you, Your Honor. Well, I will reserve my time. Thank you. Mr. Patterson? Oh, I'm sorry. No, I'm not. I understood he was doing the rebuttal, Counsel. They have 20 minutes to split as they desire. I understood from earlier, Your Honor, that two of them were going to argue. Let's argue here. Address the case. I would like to introduce my co-counselors here. Co-counsel with me is Bob Bartle and Doug Stratton. We represent four of the plaintiffs, Lois White, Tom Winslow, Kathy Gonzalez, and Ada Joanne Taylor. Also here is Herbert Friedman, who represents James Dean, and Matt Kosmicki, who represents Deb Sheldon. Ms. Chalupka, Martin Chalupka, could not be here today due to a medical condition in her family. This is an attack on stare decisis. It's an attack on the prior panel rulings. Stare decisis is the foundation for the rule of law. I'm going to read a quote from a recent case from a 2015 case, Kimball v. Marvel Enterprises. To stand by things decided, which is the definition of stare decisis, the things decided. To stand by things decided promotes the even-handed, predictable, and consistent development of legal principles, fosters reliance on judicial decisions, and contributes to the actual and perceived integrity of the judicial process. So, counsel, you're real good in the law, but now let's talk about the facts and the jury verdicts. This is a confusing set of verdicts where there's no conspiracy, and DeWitt's not liable for anything, personally. Not reckless investigation, not manufacturing evidence, but the same jury says the county's liable. Tell us how we reconcile that to uphold any verdict against the county. It's exactly what Judge Kopp said in his order. DeWitt functions, in this case, the record reflects that DeWitt functioned both as an investigator and as the county sheriff, who is the chief policymaker, decision maker for the county. Liability was assessed based upon his decisions as the director of the investigation. Liability was not focused because of his acts as the investigator. And I would like to point out, too, that the jury's finding doesn't mean that DeWitt didn't investigate. If you look at the jury instruction, the statement about how causation is established is that the conduct has to directly result in a plaintiff's damages. It has to be the direct result of the plaintiff's damages. First of all, our jurors were extremely careful in how they conducted this analysis. There were 60 decisions that they had to make, factual decisions. They only found for us on 23. They were very careful in how they viewed this evidence. And if you think about it, I think what they did was that they looked at what was a direct cause and what was an indirect cause. I think it's more reasonable to think that direct—I mean, there's no question by looking at the record that DeWitt was involved in investigating in some capacity, as he was in directing the conduct of his officers. And I think it's more reasonable to say that what the jury decided was that DeWitt's conduct as the investigator was secondary or an indirect cause. And the same thing is true with conspiracy. As this court has said in Dean v. County of Gage, there's substantial evidence of conspiracy between DeWitt and former county attorney Richard Smith. But what—and again, we also objected to the conspiracy instruction that it failed to identify for the jurors that conspiracy— But you didn't cross-appeal, right? We didn't cross— OK, say something else. Yeah, say something else. Go ahead. Well, all I'm saying is that we think that what the jury decided was that, again, conspiracy was a secondary or an indirect cause. And the real cause of this was the conduct of the investigators, Searcy and Price, and DeWitt's direction, authorization, and ratification of that conduct, of that investigative conduct. What's your base case that ratification counts? What's the best case that ratification counts? Just ratification alone, not the other things you said. Well, it's the jury instruction itself. It's accepting after the fact the conduct of the investigator. And they have—no one's appealed from the jury instruction. And I think I have that here. Was the jury instructed with the word ratification? No, the jury instruction is accepting—ratification is my redefinition. Right. The final part of it is accepting the officer's conduct after the fact or something like that. Well, it does say that. OK, proceed. And it's three factors. It's directing that the conduct occur, accepting or authorizing that the conduct occurred, and then accepting the conduct after the fact. Does it say and or or, counsel? Or. Thank you. It's disjunctive. So, to Judge Shepard's point, the jury—it's not the individuals that deserve deference for the jury's verdict, it's the jury's verdict itself. The jury's verdict itself is what has to be conceptualized and rationalized and made sense of. And what I've told you, I think, what I've argued before,  as this court has noted, there's substantial evidence of a conspiracy, of conspiratorial acts. The jury saw that. What the jury considered and what the jury concluded, in my view, is that conspiracy did not directly result in plaintiff's damages. That's the wording of the jury instruction. And Judge Benton, you asked a lot about the conduct of Sheriff DeWitt, and I made a list of things here. You know, Sheriff DeWitt was in charge of the investigation. At any point in time, he could have done exactly what the Beatrice Police did and said, none of this is adding up, and we're not going to investigate this any further. But he didn't do that. What he did was, he had all the reports. His testimony—and again, his testimony was taken at a time when he was very ill, right? And so we really weren't able to ask him much. But his testimony is, he read all the reports. And so the reports are that Joseph White and Tom Winslow could not be the source of crime scene semen. He read those reports. So every time someone, after May 11th, every time someone said, only Joe White and only Tom Winslow raped Mrs. Wilson, he knew that was false. And what'd he do? He did nothing. He ignored it. He just let it go. And one of the—and let me go through some more things that he did. He ignored the fact that Kathy Gonzales' type B blood didn't match the type B blood at the crime scene. It was Sheriff DeWitt who assigned Dr. Price to go and interview Deb Sheldon. And the testimony that came out was that what Dr. Price did was ask Deb Sheldon over and over and over who else was there, told her to go back to her jail cell and relax, and it may come back to you in dreams. And miraculously, James Dean came to her in a dream. That was the only basis to arrest James Dean. When James Dean said, I didn't do it, DeWitt assigns Price to go see James Dean, and he counsels James Dean. And this is even in Price's report. He said that James Dean walked into this meeting after having this polygraph, and it was adamant that he wasn't involved in the murder. But after Dr. Price explained things to him, James Dean came to doubt his veracity and started believing that he may have been there. Then James starts having these dreams. Again, dreams that Dr. Price instructed him you will have if you just go back, you may have if you just go back to your cell and relax. And we know this all happened because he did a recorded interview of Kathy Gonzales, told her that same thing, and then he admitted in court that that is exactly the same thing that he told Deb Sheldon and James Dean, that if you just go back to your cell, your memory of the murder may come back to you in dreams. If I could get a drink. You may. Thank you. Price knew that dreams were not real memories, that the testimony at trial from the psychologist Eli Chesin was that dreams are fantasy. The testimony from Richard Leo, our expert on wrongful convictions, are that dreams are not an evidentiary basis and no police take the idea that a dream represents a factual representation. He knew that. DeWitt knew it too. Dreams are not real. Dreams are fantasy. DeWitt directed his officers to do that. That's why the county is liable. Is there any basis for us to revisit the qualified immunity issue? No, I mean, it's the other day I looked at Winslow versus Smith and White versus Smith and they've been cited close to 90 times since 2012. I mean, that is that's settled law. The as I argued in the brief, the prior panel rule, it's interesting that the that the Winslow and White majority is here today. But the prior panel rule talks about how a subsequent panel does not have the authority to over to reverse a prior panel. What Ms. Romanzo said about clearly established, well, Wilson versus Lawrence County again said that in 1986, it was clearly established that with that reckless investigation can be a deprivation of a right to fair criminal proceedings. One thing that the defendants try to do today is redefine or take away the definition of what this court has said is a reckless investigation. And what this court has relied on over the years is that and this is I'm going to quote from White. We have previously recognized that the following circumstances indicate conscious, shocking behavior in the context of a reckless or intentional failure to investigate a claim. One, evidence that a state actor attempted to coerce or threaten the defendant. Two, evidence that the investigators purposely, purposefully ignored evidence suggesting the defendant's innocence. And three, evidence of systematic pressure to implicate the defendant in the face of contrary evidence. In the incident case, there is evidence that the defendants successfully coerced and threatened White's co-defendants into implicating themselves and White in Wilson's murder. Repeatedly ignored inconsistencies and implausibilities in the testimony implicating White and exercised systematic pressure to procure White's conviction despite the unreliability of the evidence that was involved. That was from White. So giving all due inferences to the jury's verdict, what you just read, doesn't that describe the Sheriff's actions? And how do you separate those from between investigative and directing an investigation? I agree that it does also state exactly what Sheriff DeWitt did. Isn't that really a distinction without a difference? I don't understand that question. Well, I'm talking about the arguably inconsistent verdicts here with respect to the Sheriff individually and as policy maker. And how do you distinguish? Isn't that too fine? Doesn't that cut this too fine for anybody to be able to make that distinction? I think it is a fine distinction, but I think that the distinction that the jury made is that DeWitt's direct involvement, that DeWitt, his involvement that was a direct result of plaintiff's damages was his directing of the investigation, authorizing the conduct of his deputies. Wouldn't that necessarily involve a conspiracy? You know how broad conspiracy is in federal law. Wouldn't that have to be a conspiracy? Well, again, you told me not to talk about the conspiracy jury instruction that we asked for, but I think that the jury instruction we asked for made it sound like it had to be a handshake deal for there to be a conspiracy. And I agree that we're talking about a fine line here. But the difference is, Searcy and DeWitt agreeing to do X versus DeWitt directing Searcy to do X, DeWitt authorizing Searcy to do X, or DeWitt ratifying Searcy having done X. And I agree that it's a fine distinction. But again, like I said, I think this jury was highly educated and very, very careful in what they did. So the jury, you think, could conclude that he directed one of his detectives to do something, but there wasn't, even though that person carried out that direction, there would be no agreement to do so? There wasn't a handshake deal between DeWitt and Searcy saying, yeah, I'm going to do this and we're going to be violating the constitutional rights, or we're going to be ignoring evidence by doing this, or we're going to be doing something that would be in derogation of a right to a trial. Conspiracy law doesn't require an articulated conspiracy agreement, does it? It does not. We tried to make that case to Judge Cuff, but were unsuccessful. Going back to the clearly established and having a case directly on point in order to proceed with this, the panel in Winslow specifically addressed that point. And what the panel in Winslow did was they brought up two Supreme Court cases, U.S. V. Lanier and Hope v. Pelzer. And both of those cases stand for the proposition that factual similarity is not necessary in every instance to give fair warning to law enforcement that the conduct at issue would violate clearly established constitutional rights. The law requires merely that the defendants need only to be able to reasonably anticipate when their conduct may give rise to liability. The contours of the right violated must be sufficiently clear and that a reasonable officer would understand that what he was doing violates that constitutional right. Any reasonable officer in 1989 would know that you cannot frame six innocent individuals for a murder. And that's exactly what they did here. They ignored every bit of evidence, clear evidence, that exonerated particularly Joe White, Tom Winslow, and Kathy Gonzalez. They pressured psychologically extremely vulnerable individuals to go back to your cell and dream and this will come to you in dreams. And if you don't do something like this, this is a death penalty offense. They were constantly, before anyone pleaded, the testimony is, they were constantly told about this is a death penalty offense. The stories that people came up with in their dreams bore no relationship to the actual crime scene facts. For example, Debbie Sheldon dreamed that this murder occurred at 8 o'clock, but we know from the original crime scene investigation that Mrs. Wilson was with her son until 945 that evening. Debbie and James said that there was loud screaming when Mrs. Wilson was being sexually assaulted. We know from the autopsy report that sexual penetration occurred around the time that the heart stopped, so there wasn't loud screaming. And the officers just ignored it. They just kept pressing forward to get their conviction. What about the Beatrice Police Department and instructions to the chief of police to stay out of the investigations? The comment was made by counsel that the sheriff had no authority to make that direction. Well, the sheriff was not the supervisor of Sam Stevens, who was a Beatrice Police cop, but what the sheriff said was Beatrice Police stay out of the investigation because Sam Stevens is muddying the investigation. So what the sheriff had every authority to do was to say, Beatrice Police, I don't want you in my investigation, which is exactly what he did. And they said, we don't want you in. I don't want you in my investigation because Sam Stevens is out there questioning these witnesses, questioning their credibility, and he's muddying the waters. That's what the evidence reflects. That's exactly what happened. And did the chief of police testify? The chief of police passed away before the first. What's the evidence that in response to that direction, that that's exactly what the Beatrice Police did, that they backed out? From Mr. Sgt. Stevens testified, and the county attorney, Mr. Smith, agreed that the Beatrice Police were out after that, this meeting on March 31st. That's the muddy the waters quotations, correct? That's the muddy the waters, yes. Yeah. If there aren't, I really don't have, I think I've addressed the, well, the jury instruction, the notion that unreliable, that officers can, it's not just that the word unreliable was in the jury instruction, that jury instructions have to be read as a whole. Gathering unreliable evidence, again, not a constitutional violation. It does say or between it though, right? I think it says, you know, I got that. False or unreliable. It says false or unreliable, doesn't it? That's what I was referring to. Okay. And, yeah, it does. Sure, proceed. And, but it's just, it's gathering, it's gathering unreliable evidence recklessly. It's, it's without heat or concern for the consequence of gathering that evidence and then using it in a death penalty case. It's just officers, the testimony was that officers are trained to filter out unreliable evidence. Deputy Searcy's testimony was that that's what he did in an investigation. He assessed the credibility of all the, anybody he would interview. Deputy Searcy and all of his arrest affidavits swore to the reliability of his informants and the information. And he'd also add other factors in to bolster their credibility. He would always talk about credibility, reliability of the evidence. So it's, it's just really a non-factor. I mean, officers are required to understand whether the evidence that they are going to forward is reliable or not. Unless there's any further questions, I really don't have anything else to discuss. Thank you for your argument. Rebuttal from Mr. O'Brien. Judge, I hardly know where to start. There's so much disagreement in this case. One of the things I want to observe, however, is that we're still talking about innocence before you as a panel. This wasn't about innocence. That's one of the complaints we've had in this case from the beginning. The plaintiffs wanted a finding from Judge Kupp that they were actually innocent when a jury instructed in that way. This is not an innocence case, but that's, in fact, what they tried to try the case as. And that's one of the problems, I think, that we have as a result of the verdicts of the jury in this case. I want to go back to the Sam Stevens things. That keeps coming up. I think very clearly two things are apparent. Sam Stevens did something he wasn't supposed to do. He was instructed to go interview a witness with Searcy. He went and interviewed a witness by himself. Nobody disputes he should have done that. Not his supervisors or anybody else. And that's muddying the waters comment. That's what it's all about. Nothing more. Secondly, the meeting at which Sam Stevens was confronted with this information while it was in the Sheriff's Office was attended by the Beatrice Police officers commanding Sam Stevens along with the county attorney. And all of this occurred after charges had been filed and while the prosecution process was going on. And it's clear from the evidence that Lieutenant Wilkie of the Beatrice Police Department is the one that removed Sam Stevens from the investigation. The police department didn't appoint anybody else to continue the investigation, but there's no evidence in the record that they couldn't have done so had they chosen to do that. So that's a red herring. Secondly, when Mr. Patterson talks about all the things the sheriff knew, if you look at his brief particular, you'll see that he uses words like should, could, should have, ought to have, those kinds of words. He doesn't identify in any particular what it is that Sheriff DeWitt did that constituted a violation, the acquiescence in a violation, or the participation in a violation. And in fact, the fact that no conspiracy was found, that Sheriff DeWitt was not found to be unreliable in any regard with respect to any of the investigative tactic complained of herein, I think very strongly shows that the county liability based on his actions is inappropriate. I don't know of any law that clearly shows that it's a constitutional violation not to stop an investigation as a law enforcement officer when you think that you have some unreliable evidence. Maybe even when you have a lot of unreliable evidence. I think the more appropriate standard for a law enforcement officer is to gather whatever evidence there is to gather and turn it over to the prosecutor for the prosecutor's evaluation. That's what happened in this case. These officers didn't initiate the prosecution, and in fact, most of the information complained of by the plaintiffs in this case occurs after prosecution happened. Take James Dean, for example. When he was arrested, he didn't give any statement. First statement he gave was after his attorney had arranged for him to take a polygraph, which he failed. That interrogation was conducted by the county attorney as well as his attorney, and it was at his request, at his attorney's request, that Dr. Price, for example, went and talked to James Dean first. Counsel, your time has expired. Your Honor, we would ask that this case be reversed in an order granting motion for judgment as a matter of law based on both county liability and qualified immunity be entered by this court. Thank you. Thank you for the argument. Case 16-4059 is submitted for decision.